UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOSE CANCHOLA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-3118 |
| | ) | |
| ILLINOIS DEPARTMENT OF CORRECTIONS *et al.*, | ) ) | |
|     Defendants. | ) | |

## ORDER

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court for screening is a Complaint (Doc. 1) filed under 42 U.S.C. § 1983 by Plaintiff Jose Canchola, an inmate at Graham Correctional Center. Plaintiff also filed Motions for Counsel (Doc. 5) and Status (Doc. 8).

**I.     Screening Standard**

The Court must "screen" Plaintiff's complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. Upon reviewing the complaint, the Court accepts the factual allegations as accurate, construing them liberally in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

## II. Factual Allegations

Plaintiff alleges constitutional violations at Graham Correctional Center ("Graham") against the following Defendants: Illinois Department of Corrections ("IDOC") Director Latoya Hughes; former Graham Warden Steven Campbell, Dr. Tim Adesanya, Wexford Health Sources, Inc. ("Wexford"), and IDOC.

On April 13, 2023, Plaintiff underwent shoulder surgery. Plaintiff asserts that on May 11, 2023, tactical team officers failed to confirm whether Plaintiff had a "medical exception card" authorizing hand restraints to be applied in front of Plaintiff's body instead of behind his back. Plaintiff filed a grievance, and the grievance officer determined Plaintiff did not have a medical exemption, which the Chief Administrative Officer approved. (Pl. Compl., Doc. 1 at 15.) Plaintiff also asserts Defendant Adesanya refused to recommend Plaintiff for physical therapy that was recommended by an "outside MD." (*Id*. at 7.)

## III. Analysis

To be deliberately indifferent, a medical professional's decision must be "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)). A doctor's failure to refer a prisoner to an outside specialist may support an inference of deliberate indifference if the need for such treatment was known to the treating medical professional or readily apparent to a layperson. *Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014). "A jury can infer conscious

Page **2** of **8**

disregard of a risk from a defendant's decision to ignore instructions from a specialist." *Zaya v. Sood*, 836 F.3d 800, 806 (7th Cir. 2016).

Plaintiff's account is sufficient to state an Eighth Amendment deliberate indifference claim against Defendant Adesanya. However, Plaintiff fails to state a claim against the remaining Defendants.

Under Federal Rule of Civil Procedure 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level." *Bravo v. Midland Credit Mgmt.*, 812 F.3d 599, 601–02 (7th Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (explaining that plaintiffs "need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of"). In addition to describing the claim, a plaintiff must also give "some indication . . . of time and place." *Thomson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004).

Despite naming Defendants Campbell and Hughes, Plaintiff does not allege any facts that establish or permit the inference that either committed a constitutional violation. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

To the extent Plaintiff names Defendants Campbell and Hughes for their participation in the grievance process, this also does not state a claim. "Longstanding

precedent has established that prison inmates do not have a constitutional right to an effective grievance procedure or to have prison officials comply with their own grievance process. *Vilayhong v. Billington*, No. 24-01683, 2024 WL 5119133, *2 (S.D. Ill. December 6, 2024) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). "The Constitution requires no procedure at all, thus the failure of prison officials to follow their own grievance procedures does not, standing alone, violate the Constitution. Thus, the mishandling of a prisoner's grievance, failure to investigate a grievance, or misconduct related to the grievance procedure, will not support a constitutional claim." *Id*. (internal citations omitted).

Defendant Wexford can be held liable under § 1983 if an unconstitutional act is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010); *see also Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927-28 (7th Cir. 2004) (stating that the standard for municipal liability in *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), applies to corporations as well). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby [clarify] that municipal liability is limited to action for which the municipality is … responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphases in original).

Plaintiff does not state a claim against Wexford as he does not allege that a Wexford policy was the direct cause or moving force behind any constitutional violation.

*See Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014) ("The plaintiff . . . must establish a causal link between the corporation's policy (or lack of policy) and the plaintiff's injury."); *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) ("To establish municipal liability, a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights.") (quoting *Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)).

## IV. Motions for Counsel and Status

Plaintiff has no constitutional right to counsel, and the Court cannot require an attorney to accept *pro bono* appointments in civil cases. The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) (holding that although indigent civil litigants have no constitutional right to counsel, a district court may, in its discretion, request counsel to represent indigent civil litigants in certain circumstances). In considering Plaintiff's motion for counsel, the Court must ask two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff has demonstrated he has satisfied his threshold burden by attaching four responses from law firms declining to represent him.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021). "These two

considerations 'are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand.'" (*Id*.) (quoting *Pruitt*, 503 F.3d at 655).

Specifically, courts should consider "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Eagan*, 987 F.3d at 682. "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings." *Id*. The assessment "must include 'the tasks that normally attend litigation: evidence gathering, preparing[,] and responding to motions and other court filings, and trial.'" *Id.* "Although there are no fixed criteria for determining whether a plaintiff is competent to litigate his … case, a district court certainly should consider the plaintiff's literacy, communication skills, educational level, litigation experience, intellectual capacity, and psychological history." *Id*. at 682-83.

The Court concludes that the recruitment of counsel at this early stage of the proceedings is not warranted. As explained below, entry of the Court's Merit Review Order begins the service phase. After Defendant Adesanya has been served and has responded to Plaintiff's complaint, which usually takes sixty days, the Court will enter a scheduling order that provides guidance and deadlines to assist Plaintiff during the discovery process. Therefore, the Court denies Plaintiff's Motion for Counsel (Doc. 5).

Plaintiff's Motion for Status (Doc. 8) is moot with the entry of the Court's Order.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's Motion for Counsel (Doc. 5) is DENIED.

2) Plaintiff's Motion for Status (Doc. 8) is MOOT.

3) According to the Court's Merit Review screening of Plaintiff's Amended Complaint under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with an Eighth Amendment deliberate indifference to serious medical need claims against Defendant Adesanya. Plaintiff's claim proceeds against Adesanya in his individual capacity only. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.

4) The Court DIRECTS the Clerk of the Court to terminate Steven Campbell, Latoya Hughes, Wexford Health Sources, Inc., and the Illinois Department of Corrections as parties.

5) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendant before filing any motions to give Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.

6) The Court will attempt service on Defendant by mailing a waiver of service. Defendant has sixty days from service to file an Answer. If Defendant has not filed his Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the Court will enter an order setting discovery and dispositive motion deadlines.

7) If Defendant no longer works at the address provided by Plaintiff, the entity for whom Defendant worked while at that address shall submit to the Clerk Defendant's current work address or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8) Defendant shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendant's positions. The Court does not rule on the merits of

those positions unless and until Defendant files a motion. Therefore, no response to the Answer is necessary or will be considered.

9) This District uses electronic filing, which means that after Defendant's counsel has filed an appearance, Defendant's counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendant's counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Instead, Plaintiff must mail his discovery requests and responses directly to Defendant's counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendant's counsel has filed an appearance, and the Court has entered a scheduling order, which will explain the discovery process in more detail.

10) Defendant's counsel is granted leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange the time for the deposition.

11) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.

12) If Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendant and will require Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).

13) The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

14) The Court directs the Clerk to attempt service on Defendant under the standard procedures.

ENTERED March 4, 2026.

s/ *Colleen R. Lawless*
_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE